# CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY

## v.

# THE CITY OF OTTAWA.

*Railroads—Municipal Ordinance—Gates at Street Crossings—Injunction to Restrain the Prosecution of Suits.*

1. A court of chancery has no jurisdiction to restrain and enjoin the prosecution of a suit based upon the violation of a municipal ordinance and to settle the legality thereof.

2. No matter how numerous the suits may be, equity will not interfere on the ground of the invalidity of the ordinance under which the prosecution is had, or the innocence of the party complaining.

3. Upon a bill filed by a railroad company to enjoin the prosecution of thirteen suits at law, brought by a municipality against it under an ordinance of the city requiring complainant to put gates at certain street crossings to protect persons crossing over its track against injury from trains on its road passing through said city, this court holds that the case presented comes within the general rule.

### [Opinion filed May 25, 1893.]

APPEAL from the Circuit Court of La Salle County; the Hon. CHARLES BLANCHARD, Judge, presiding.

Messrs. SAMUEL RICHOLSON and O. T. PRICE, for appellant.

Mr. DANIEL R. BURKE, for appellee.

MR. JUSTICE LACEY. This was a bill in equity by appellant to enjoin the prosecution of thirteen suits at law brought by appellee against it under an ordinance of the city of Ottawa requiring the appellant to put gates at certain street crossings to protect persons crossing over its railroad track against injury from passing trains on its road passing through the city.

The nature of the ordinance was that it required the appellant to provide protection against injury to persons and property wherever its railroad track crossed any street, by the erection and maintenance of gates and guards and other protection, when the city council by resolution should so declare and direct; that it should within a certain time, to be fixed by the city council, erect, construct and maintain sufficient safeguards at crossings, specifying the kind of protection to be erected, constructed and maintained as aforesaid, whether it be a gate or gates, or other protection, and providing for service of a certified copy of such resolution by the city marshal on the appellant within ten days after the passage of the resolution, at the same time notifying the appellant in writing of the time fixed by the city council within which the protection so ordered should be constructed. The ordinance further provided that whenever any railroad company shall have been directed by the city council to construct, and maintain at any street crossing by its track or tracks, any gate or gates or other protection, etc., every such company should, within the time prescribed by the city council, construct and thereafter maintain the protection specified in the said resolution, under a penalty of not less than $100 nor more than $200 for each offense; and for each and every ten days after the expiration of the time so fixed for the construction of such protection, if any such company shall refuse or neglect to proceed to the erection and construction of the kind of protection specified in said resolution, it should constitute a new and distinct offense.

The city council, in 1891, by resolution, required appellant to erect, construct and maintain suitable and proper gates so as to protect all persons crossing its tracks at street crossings on both sides of its tracks, to wit: One set of gates on Main street, at Madison street, at Jefferson street, Lafayette street and at First street; each and all of said streets above named upon which a separate set of gates is required as above stated being within the city of Ottawa, La Salle County, Illinois; said gates to be erected within

thirty days after notice. After the passage of the resolution, to wit, on the 22d day of October, 1891, the proper notice was served upon appellant.

The thirteen suits in question were brought by the appellee one after another for appellant's failure to comply with the ordinance and to recover the penalty therein specified for such failure.

The prayer of the bill was, upon a final hearing, that appellee should be restrained from prosecuting under said ordinance, so far as relates to the erection of gates and to maintain same to the satisfaction of the superintendent of streets, and for a temporary writ of injunction restraining appellee from prosecuting suits against appellant excepting the two suits pending in the Circuit Court, and for general relief. To this bill the appellee filed its demurrer on the grounds that a court of chancery has no jurisdiction to enjoin the prosecution for the violation of a city ordinance, and that a court of equity could not interfere to restrain, by injunction, their enforcement in the proper court on the ground that such ordinances are alleged to be illegal, as was done in the bill, or because of alleged innocence of the party charged, nor for the purpose of determining the validity of an ordinance in a court of equity.

The bill set up under various allegations, and for various reasons, that the ordinance of appellee and resolution of the city council were void in law, and that no prosecution could be had and maintained against the appellant for failure to comply with their provisions. The court sustained the demurrer to the bill and, the appellant abiding his bill, entered a decree dismissing it and giving judgment against appellant for costs. From this decree this appeal is taken.

The appellant has filed an elaborate argument to show that the court below had jurisdiction in equity to grant the injunction prayed for, and also to prove that the ordinance and resolution of the city council were illegal and void and beyond the power of jurisdiction of the city of Ottawa to pass.

On the other hand, the appellee contends that a court of

equity has no jurisdiction to grant an injunction to restrain prosecutions for violence of city and village ordinances.

If we hold that this point is well taken, then the decree of the court below should be affirmed without reference to the validity of the ordinance and resolution of the city council in question. Upon examination of the authorities, we feel constrained to hold that in this State a court of chancery has no jurisdiction. As a general rule it has been held in this State by the Supreme Court that there is no such jurisdiction. The cases referred to are Gates v. The Village of Batavia, 79 Ill. 500, and Poyer v. The Village of Desplaines, 123 Ill. 111.

In the first case above named, the purpose of the bill was to restrain and enjoin the prosecution of certain suits against each of the complainants for violation of the village ordinance and to settle the legality of the same, providing against the evils resulting from the sale or giving away of intoxicating liquors. The court in passing upon the case used the following language:

"A court of chancery has no jurisdiction of the subject of this litigation, nor is it in the power of the parties to waive the question relating to the jurisdiction of the court and compel it to try the cause. Whatever defense, if any existed to the several actions against complainants, was complete in a court of law where they were pending, and the court very properly dismissed them to that forum."

The object of the bill in the Poyer case, *supra*, was to restrain the village of Desplaines from prosecuting suits pending against the complainant for violations of the village ordinances. The ordinance, it appears, complained of, was one declaring as a nuisance the use of certain picnic grounds near the village, owned and rented by the complainant for profit to certain persons for picnic purposes, providing a penalty for a violation of the ordinance. Poyer had been sued and fined fifty dollars for a violation of the ordinance and six other cases had been commenced against him to recover for certain other alleged violations of the same ordinance. The court held the bill bad on demurrer and the Supreme Court holds the following language, to wit:

" Courts of equity will not, as a general rule, interfere to restrain criminal or quasi criminal prosecutions or take jurisdiction of any cause or matter not strictly of a civil nature. Story's Eq. Jur., Sec. 893; 2 Daniell's Chancery Practice 1620; Montgomery R. R. Company v. Walton, 14 Alabama, 209." And further deciding, the court says, " the legality or illegality of the ordinance is purely a question of law which the common law court is competent to decide."

The court, in further commenting upon the case, in answer to the claim that equity might have jurisdiction to prevent the multiplicity of suits says : " Bills of peace will lie under some circumstances for the purpose of quieting and suppressing litigation. It is said, however, that to entitle a party to maintain a bill on this ground there must be a right claimed affecting many persons; for if the right is disputed between two persons only, not for themselves and others in interest but for themselves alone, the bill will be dismissed. 2 Story's Eq., 857."

It plainly appears, from the above decisions of the Supreme Court of this State, that equity will not entertain jurisdiction, as a general rule, to prevent or restrain the prosecution of suits against one who violates a city or village ordinance, however numerous those suits may be, on the ground of the invalidity of the ordinance under which the prosecution is had or the innocence of the party complaining. This rule, then, will apply to this case and will be decisive of the question unless there is something peculiar in the facts which would take it out of the general rule.

The appellant, as we understand, claims that the facts are such as, notwithstanding the above decisions of the Supreme Court, to take the case out of the general rule and to give equity jurisdiction. They are, in substance, that if the relief in equity be denied, the appellant would be compelled to surrender its charter or suffer a long and expensive litigation, and be compelled to expend money for work and material in making, erecting and putting in operation the gates required by the ordinance and resolution of the common council, which could never be recovered, even if in the end it were

successful in defeating the wrongful prosecutions under the ordinance; and there would be a multiplicity of suits. We fail, however, to see that there is any difference in this case in principle as to the circumstances existing, and the two suits passed upon by the Supreme Court.

There is only one thing that can be claimed as such, with any show of plausibility, and that is that in this case, in order to escape prosecution being multiplied under the ordinance, it would be obliged to expend money in erecting the gates in question, whereas, in the other two cases, the only thing the prosecuted parties would have to do to prevent such prosecutions would be not to violate the liquor ordinance in the one case and not to rent the park to picnickers in the other.

We conceive, however, there is not much difference in principle in this regard, for the liquor seller in the one case may lose the opportunity to sell his stock of liquors for a profit; and the other to lose the use of his park by being prevented from renting it.

It will be seen that the appellant need not put up the gates if the ordinance is void, for it will succeed in the end in defeating all the prosecution and throwing the cost of the litigation on the city. The same would be the case with the liquor seller and the owner of the park. Neither party would sustain any irreparable loss except the trouble and expense of litigation which the court seems not to regard as irreparable.

It is deemed the better policy and better rule to deny jurisdiction in this class of cases to a court of equity, and we see no good reason in law why this case should be made an exception to the general rule.

Seeing no error in the record of the court below the decree is affirmed.

*Decree affirmed.*